N. J. RANKINE V. J. P. GREER, *as Administrator of the estate of E. J. Cady, deceased.*

1. CHATTEL MORTGAGE; *Execution; Levy; Possession.* Where an officer levies an execution on property in the possession of a mortgagor, the levy attaches only to the interest of the mortgagor therein; and where the mortgagor's right of possession afterward terminates by default in the payment of the mortgage debt, *held*, that upon default the mortgagee is entitled to the possession of the property as against the officer.

2. REPLEVIN, *When Maintained by Mortgagee.* Where default is made and the mortgagee demands possession of the mortgaged property, and the officer refuses to surrender it, *held*, that the mortgagee may maintain an action in replevin for the possession thereof without first demanding payment of the mortgage debt from the mortgagor or officer.

3. —————— *No Defense.* In such a case it is no defense for the officer to show that, at the time of such demand and refusal, another person held an unsatisfied prior mortgage on the property, by which such other person might have a right of possession as against the mortgagee.

*Error from Shawnee Superior Court.*

ACTION brought by the plaintiff in error to recover the possession of two mares claimed by her by virtue of a chattel mortgage given to her by one Brinzendine, the owner. The action was brought against E. J. Cady, who was a constable, and held and claimed possession of the property in controversy by virtue of an execution issued against Brinzendine. Trial by the court at the April Term, 1886, and judgment rendered

for the defendant. The plaintiff has brought the case to this court. The court below made findings of fact and conclusions of law as follows:

"FINDINGS OF FACT.

"1. On March 27, 1885, one David Brinzendine borrowed from the plaintiff $500, to secure which he executed to and in favor of the plaintiff his chattel mortgage of that date, of and upon one roan mare and one brown mare, together with a lot of other personal property, consisting of one horse, several cows, calves, a cultivator, a wagon, plow, etc.

"2. Said mortgage recited that the principal indebtedness was $550, and it was made payable thirty days from the date of the mortgage, with interest at 12 per cent. per annum after maturity; and it provided that the mortgaged property should 'remain in the possession of said Brinzendine until default is made in the payment of the debt and interest as aforesaid.'

"3. At the time of executing said mortgage, Brinzendine made his affidavit, which was indorsed upon the back of said mortgage, stating among other matters that he was the owner of the property mentioned in the mortgage, and that there were no chattel mortgages or liens upon said property except one chattel mortgage for $125, in favor of Lockard & Gillette, and one other chattel mortgage for $100 in favor of C. W. Ament. This affidavit was sworn to before James L. Rankine, a notary public.

"4. James L. Rankine, the notary public mentioned in the last finding of fact, then was and still is the husband of the plaintiff, and the entire business respecting said loan and the taking of said mortgage was transacted between said Brinzendine and said James L. Rankine, as agent for the plaintiff, and said James L. Rankine had actual knowledge at the time of taking said mortgage of the existence of the two mortgages mentioned in said affidavit.

"5. The mortgage so taken for plaintiff by her agent was duly filed for record on the day of its date, March 27, 1885. The mortgage to C. W. Ament for $100 was executed on the 26th day of March, but was not filed for record until the 14th of April, 1885. It does not appear when or whether the Lockard and Gillette mortgage was recorded, nor is there any claim or defense in this action grounded upon such instrument, in whole or in part.

"6. On the 27th of March, 1885, one Elizabeth Greer, as plaintiff, recovered a judgment against said David Brinzen-

dine, as defendant, before W. R. Hazen, Esq., one of our justices of the peace, for $110.75 debt, and $9.45 costs. On the 16th of April following, a writ of execution was issued on said judgment directed to E. J. Cady, the defendant in this suit, as constable. Said writ of execution was returned by Cady to said justice on the 11th day of May following, and from his return the following facts are shown: Cady received said writ April 16th; the next day he delivered a copy thereof to Brinzendine, the judgment debtor; and he also levied upon and took into his possession the roan mare and the brown mare mentioned in the first of these findings of fact. On the 22d of April he advertised said property for sale by posting four notices as required by law, said sale to take place on the 5th day of May. On the 1st day of May the plaintiff in this action, N. J. Rankine, replevied the two mares from him; whereupon Cady gave a redelivery bond and retained possession of the roan mare, and the brown mare was delivered to said Rankine; and on the 5th of May, and before the hour fixed for selling said property, the roan mare was taken from Cady's possession on a writ or order of replevin commenced against him at the suit of C. W. Ament; and with these facts indorsed thereon, said execution was returned by Cady unsatisfied.

"7. It is not shown that the plaintiff made any demand of Brinzendine, or of anyone for him, after the mortgage debt owing to her became due, that said debt be paid; nor was there any testimony offered tending to show such fact; nor did the defendant at any time, or anyone for him, pay or tender, or offer to pay plaintiff the balance owing to her on said Brinzendine mortgage.

"8. The mortgage held by Ament stated that the debt due him from Brinzendine was payable 'in thirty days' from the date of the mortgage, (26th March,) and it provided that Brinzendine should remain in possession of the mortgaged property 'until default is made in the payment of the debt and interest aforesaid.' Said debt became due April 25th.

"9. James L. Rankine and C. W. Ament, at the time of taking said mortgages from Brinzendine, were money-lenders and brokers, doing business in Topeka, not as partners, but each separately on his own account.

"10. On the first day of May, 1885, and after due demand had been made by the plaintiff for the possession of said roan mare and said brown mare, this action was commenced in this court to replevy said two mares from the defendant Cady.

The petition and affidavit for the order of delivery both state that the plaintiff bases her title to the property upon the chattel mortgage given by Brinzendine to her, already mentioned. As shown by Cady's return on the execution mentioned in the 6th finding, the plaintiff obtained the brown mare upon the order of delivery, while Cady gave a redelivery bond and retained the roan mare.   After said mortgage debt became due, and prior to the commencement of this action, Brinzendine had paid the plaintiff the whole of said mortgage debt except the sum of $115, and since the commencement of this action Brinzendine has paid the plaintiff $80 more on account of said mortgage debt, leaving due the plaintiff at the present time $35 only; and at the times of receiving such payments the plaintiff released to Brinzendine some portion of the mortgaged property, and all of said property was so released except the two mares replevied in this action.

"11. Since the commencement of this action the plaintiff redelivered to Brinzendine said brown mare to be kept for her, and Brinzendine afterward removed from the state, taking the mare with him; and such removal was without the knowledge or consent of plaintiff.

"12. On the 5th day of May, 1885, said C. W. Ament commenced his action of replevin against said E. J. Cady as defendant, before H. S. Clark, Esq., one of our justices of the peace, which action was tried and determined by said justice and was afterward removed from before said justice by an appeal taken by defendant Cady; and said action is now pending and undetermined in the district court of this county. Ament grounded his claim or title to said roan mare upon the chattel mortgage given to him by Brinzendine, hereinbefore particularly mentioned.   Subsequent to the appeal taken by Cady to the district court Brinzendine paid Ament his mortgage debt, and thereupon Ament delivered to Brinzendine said roan mare, and said animal was taken away by Brinzendine when he removed from the state.   On the 15th of November, 1885, Ament entered upon the records of chattel mortgages in the register's office of this county a release of his said mortgage; and he testified that his debt had been paid in full and in money.

"13. The judgment of said Elizabeth Greer against said Brinzendine, and the execution thereon held by defendant Cady when the property for which this action was brought was taken from his possession, are not satisfied in whole or in part, but

there is now due on said judgment, including principal, interest and costs, the sum of $125.25.

"14. At the time of the commencement of this action, May 1, 1885, said brown mare and said roan mare were each worth $125, making a total value of both mares at that time $250."

"CONCLUSIONS OF LAW.

"1. The 'legal title' acquired by a mortgagee under the provisions of §15 of the act concerning mortgages, respecting property covered by a chattel mortgage, is not an absolute ownership, but is a mere naked title as against the mortgagor only, given to enable the mortgagee to enforce the right of possession whenever necessary for his protection.

" 2. The mortgagor, being in possession of the property in controversy in this suit at the time the levy was made by Cady, and being entitled by the terms of the mortgage to the possession of the property for a definite period as against both Rankine and Ament, which period had not yet expired, defendant Cady as constable had the right to take and seize such property upon the writ of execution which he held; and having done so, he thereby acquired a lien upon said property in favor of the execution creditor, Mrs. Greer, as against Brinzendine, the execution debtor, which lien entitled him to all the rights of possession which Brinzendine had as against Ament, as first mortgagee, and as against plaintiff as second mortgagee.

" 3. The knowledge of James L. Rankine, at the time of taking the mortgage to plaintiff, of the existence of the mortgage held by Ament, was the knowledge of the plaintiff; and by reason of such knowledge the mortgage to plaintiff became and was a second mortgage. As against an execution creditor whose rights intervened before the mortgagor's right of possession stipulated in either of said mortgages had expired, the plaintiff, as second mortgagee, had only the right to redeem as against the first mortgagee; and as against the defendant representing the execution creditor, Ament's and plaintiff's mortgage debts respectively became mere prior liens entitled to be first paid off or satisfied out of the proceeds of the sale of the mortgaged property, neither of them having the right of possession as against defendant Cady until there was a default in the payment of the mortgage debt; and as it does not appear that any demand of payment of the debt due her was made by plaintiff either of Cady, who took and held the property as constable, or of Brinzendine the mortgagor, after said debt became due and before the commencement of this action,

there was no default in payment of said debt when this action was brought; and plaintiff, whether first or second mortgagee, was not entitled to the immediate possession of the property in controversy. Making a demand of Cady for the possession of the property was not sufficient to create a default in the payment of Brinzendine's debt.

"4. While the action of Ament as plaintiff against Cady as defendant is not before this court, and the rights of the parties thereto cannot be settled or determined here, the court here finds in this action that by and through legal process in said action of Ament against Cady, said Cady (who is also the defendant here), without fault of his, was deprived of the roan mare in controversy in this suit, and is not liable to further respond in this action for said animal, or for its value.

"5. Defendant Cady did not wrongfully detain from plaintiff the possession of said brown mare at the commencement of this suit, but rightfully held possession thereof as constable, subject to the value of plaintiff's mortgage lien thereon.

"6. By the payments made by Brinzendine to plaintiff, whereby the whole of his mortgage debt except the sum of $35 has been paid and satisfied, the value of plaintiff's lien on the brown mare in controversy has been reduced to said sum of $35, which sum must now be taken to be the value of said lien at the commencement of this suit.

"7. The value of the lien and right of possession of the defendant Cady, as constable, at the commencement of this action, was the value of the brown mare less the value of plaintiff's lien on said animal.

"8. The defendant is entitled to the return to him as constable of the possession of the brown mare in controversy, if return thereof can be made or enforced, to be by him duly advertised and sold upon execution upon the judgment hereinbefore mentioned in favor of Mrs. Greer against Brinzendine.

"9. If the plaintiff shall fail or refuse to redeliver to the defendant said brown mare, and return thereof cannot be had, then and in that case the defendant, by reason of the wrongful caption and detention by plaintiff of said animal, will be entitled to recover of and from the plaintiff the difference between the value of said animal at the commencement of this action, and the value of plaintiff's lien thereon as hereinbefore ascertained, together with interest on said sum at seven per cent. per annum, to be ascertained as follows: value of brown mare, 1st May, 1885, $125; deduct value of plaintiff's lien, leaving a balance of $90; interest on $90 from the first of

May, 1885, until present time, $6.30, making a total of $96.30, which sum when recovered shall be for the benefit of Mrs. Greer, the execution creditor named in the writ of execution held by defendant when said animal was taken from him in this suit, and must be applied on the judgment recited in said execution."

*Vance & Campbell*, for plaintiff in error.

*J. P. Greer*, and *Thomas Archer*, for defendant in error.

Opinion by CLOGSTON, C.: The question presented for our consideration is, are the conclusions of law and judgment sustained by the findings of fact as found by the court? If they are, then the judgment was properly rendered thereon for the defendant. At the time this action was commenced, Cady, the constable, was in possession of the property by virtue of an execution regularly issued upon a judgment in favor of Mrs. Greer. This execution was properly levied upon the property in controversy, and by such levy all right of Brinzendine, the owner, was transferred to the judgment creditor; but this levy gave the constable no greater right to the possession of the property than Brinzendine had, and when demand was made upon the constable for the property it was his duty to surrender it to the mortgagee, the plaintiff in this action. This surrender would have passed the property to the plaintiff with this additional burden or lien of the execution creditor, which would have the effect to transfer whatever right Brinzendine had in the proceeds after the sale of the property under the mortgage, and the satisfaction of the debt secured thereby to the execution creditor or to the constable who held the execution. Releasing the property to the plaintiff would not release the lien established by the levy, only so far as the possession of the property was concerned, but the lien would continue and bind the surplus proceeds to the amount of the judgment and costs. By the terms of the mortgage, plaintiff was entitled to the possession of the property upon default in the payment of the debt for which the mortgage was given, and all that it was necessary for the

plaintiff to do before bringing the action was to demand the possession of the property under his mortgage. The mortgage having been given to secure a debt, and the debt having become due, no demand was necessary upon Brinzendine for its payment, and consequently no demand was necessary upon the constable, except for the possession of the property.

Defendant also insists that, as it was shown that Ament had a first mortgage upon the property, which was also due, and gave him a prior right to its possession, for this reason plaintiff was not at the commencement of the action entitled to its possession. It is true that under a general denial in an action of replevin, the defendant may show that the plaintiff is not entitled to the possession of the property, that being the gist of the action; and to defeat plaintiff's right of possession he may not only show that he is entitled to the possession himself, but may also show that the right of possession belongs to another, even if a stranger to the action; but this right of possession must be an absolute right—one not contingent or depending upon circumstances or conditions—and it would not be sufficient to show that there were other and superior outstanding mortgages against the property, although under some circumstances or conditions the mortgagee might be entitled to the possession of the property, even as against both plaintiff and defendant. This right of possession under a mortgage is a right to be claimed by the mortgagee. He might never claim the property; it might not be necessary for him to do so; the debt might be paid, or he might have other security or other property included in his mortgage sufficient to satisfy his claim, independent of this property. This being true, we think that the fact that Ament held a mortgage on this same property is not sufficient to defeat the plaintiff's right to recover its possession as against the defendant's claim under the levy of the execution. He was entitled to the property as against the defendant and as against all the world until some other claimant asserted a better right.

Again, defendant insists that the plaintiff's debt had nearly all been paid after the commencement of the action and be-

fore trial; and the court so found. The evidence upon which this finding was made was improperly received. The issue joined and the facts to be tried were whether or not the plaintiff was entitled to the possession of the property at the commencement of the action; and if after that, payment, or anything else, had occurred that would render plaintiff's claim inoperative, it must be set up as a defense, and an application to the court showing such facts, leave to file a supplemental defense would have been given, and an issue would then have been presented. This was not done. The evidence was incompetent, and a finding or conclusion upon evidence improperly received on an issue not raised by the pleadings, will be disregarded by this court. We are therefore of the opinion that at the commencement of this action plaintiff was entitled to the immediate possession of this property as against the defendant.

It is recommended that the cause be reversed, and remanded to the court below, with an order that judgment be rendered on the findings of fact as found by the court, in favor of the plaintiff below, for the possession of the property and for costs.

By the Court: It is so ordered.

All the Justices concurring.