GEORGE HAIRE v. J. J. MILLER *et al.*

TROVER AND CONVERSION — *Limitation of Action.* H. held a mortgage on a stock of goods, in which it was stipulated that the mortgagor should retain possession until default or the mortgagee should deem himself insecure. February 5, 1887, before default, and while the mortgagor was in possession, an execution was levied on the goods, and they were advertised for sale February 26, 1887. On that day, and before the sale, H. elected to deem himself insecure, and demanded the goods from the officer, who refused to surrender them. February 23, 1889, H. commenced an action against the officer for the value of the goods. *Held,* That the statute commenced to run against H. from the date of his election to deem himself insecure, February 26, 1887, and had not fully run at the commencement of his action, February 23, 1889.

*Error from Dickinson District Court.*

ALL the material facts are stated in the opinion.

*Grattan & Grattan,* for plaintiff in error:

1. In trover, to entitle the plaintiff to recover, two points are essential to be proved: Property in the plaintiff and a right of possession at the time of the conversion, and a conversion of the thing by the defendant to his own use. 2 Greenl. Ev. (11th ed.), § 636; *Hull v. Carnley,* 11 N. Y. 509, 510; Cooley, Torts, 442; *Hale v. Omaha Nat. Bank,* 49 N. Y. 632; *Hull v. Carnley,* 17 id. 204; *Pratt v. Harlow,* 82 Mass. 381; *Goulet v. Asseler,* 22 N. Y. 234, 235; *Miller v. Pancoast,* 29 N. J. L. 250, 251, 252; *Brazier v. Ansley,* 51 Am. Dec. 408; *Fairbank v. Phelps,* 22 Pick. 535; *Codman v. Freeman,* 57 Mass. 310.

2. This case was tried on the theory that the wrong to the mortgagor was complete on February 26, 1887, and the wrong to the mortgagee began February 26, 1887, and that the market value of the goods was valued February 26, 1887, and if such were not the value as to both, it was as to the mortgagee's claim, and that was the full value as to the wrong-doer. Clearly this action was not barred. Read the special findings with the general verdict, and plaintiff must have judgment, and not the defendants. Stipulation as to right of possession in mortgagor: See Comp. Laws of 1885, ch. 69, § 15; *Tanna-hill v. Tuttle,* 3 Mich. 105–111; *Hathaway v. Brayman,* 42 N. Y. 322–325; *Brackett v. Bullard,* 53 Mass. 308–310; *Pratt v. Harlow,* 82 id. 381; *Fletcher v. Nendeck,* 14 N. W. Rep. 518; *Wolfley v. Rising,* 12 Kas. 536; *Hamlyn v. Boulter,* 15 id. 376; *Werner v. Bergman,* 28 id. 64; Jones, Chat. Mortg., § 426; *Hamill v. Gillespie,* 48 N. Y. 559; *Boise v. Knox,* 51 Mass. 43. Want of stipulation as to possession: Jones, Chat. Mortg. (3d ed), §§ 428–433.

3. Suppose the right of possession were in mortgagor and mortgagee, or either, when levy was made, February 5, 1887, and sale on February 26 and 28, 1887: the trespass was a continuing one, and was ended when the last article was sold; and then the statutes began to run only at the end of such wrong.

A levy, removal and sale upon three several days is but one act of trespass. *Browning v. Skillman,* 24 N. J. L. 352. "Every subsequent act based on the levy and depending on it for its lawfulness was but a continuation . . . of the trespass." *Welch v. Wilson,* 24 N. W. Rep. 328. See, also, *Kunz v. Ward,* 28 Kas. 136; *Sullivan v. Davis,* 29 id. 29, 34; *Ryus v. Gruble,* 31 id. 767; *Mo. Pac. Rly. Co. v. Houseman,* 41 id. 304.

4. In *Ament v. Greer,* 37 Kas. 648, and *Rankine v. Greer,* 38 id. 343, it is decided that a levy on the mortgagor's interest may be ended by the mortgagee who did not have the right of possession at time of levy, and that the levy became wrongful by the mortgagee asking for the possession. And if lawful rights may be so ended, an illegal act to a mortgagor must end when the mortgagee elects to take possession under his mortgage, and such wrong only began as to the mortgagee when the election was made. A demand is only evidence of an election. The right of a mortgagee to end the right of possession of the mortgagor is fully decided in *Werner v. Bergman,* 28 Kas. 60. See, also, *Hall v. Sampson,* 35 N. Y. 274; Jones, Chat. Mortg. (3d ed.), § 431.

5. The levy was made 5th and the mortgage filed 17th. Only those claiming from the mortgagor are concerned in the filing. It need not be filed as to wrong-doers. Comp. Laws of 1885, ch. 69, § 9; Jones, Chat. Mortg., § 237; *Pratt v. Harlow,* 16 Gray, 379.

6. If the execution debtor had any property in the goods mortgaged at time of levy, and the sheriff sold and scattered the property, he would be liable for the value of the lien injured, dissipated, or destroyed. 64 N. Y. 556; 11 id. 507; 17 id. 204; 28 id. 585; 42 id. 322; 89 id. 160; 35 Ohio St. 317; 15 Ohio, 726.

7. The court instructed the jury that a mortgagee as against a wrong-doer could only recover the value of his lien. See instruction which plaintiff asked and was refused. A mortgagee as against a wrong-doer recovers the full value of the property, and not his lien. 3 Suth. Dam., p. 474; 1 Suth.

Dam., p. 210; 1 Sedg. Dam., p. 61, and note *a* (7th ed.); *Luse v. Jones*, 39 N. J. L. 712; *M. & T. Bank v. F. & M. Bank*, 60 N. Y. 52; *Harker v. Dement*, 52 Am. Dec. 670, and footnote, 678, 679; *Barry v. Bennett*, 48 Mass. 354; *Codman v. Freeman*, 57 id. 312; *Tallman v. Jones*, 13 Kas. 438. Full value.

8. The general verdict and special findings must be considered with the entire record and harmonize them. *Bevens v. Smith*, 42 Kas. 250.

9. The findings must be interpreted so as to support the general verdict and not to destroy it. *Solomon Rld. Co. v. Jones*, 34 Kas. 445; *St. L. & S. F. Rly. Co. v. Ritz*, 33 id. 404; *Simpson v. Greeley*, 8 id. 586; *Mo. Pac. Rly. Co. v. Holley*, 30 id. 465.

10. When special findings and general verdict are inconsistent, they must be set aside and a new trial granted. *A. T. & S. F. Rld. Co. v. Weber*, 33 Kas. 543; *St. L. & S. F. Rly. Co. v. Shoemaker*, 38 id. 723; *A. T. & S. F. Rld. Co. v. Woodcock*, 42 id. 344.

11. It is conceded that the mortgagor owned the goods, and that the mortgage was not due by its terms nor by any default, and that the mortgagor had the actual possession at the time of the levy and the right of possession at the time of sale, on February 26, and that no injury was done to the goods until on 26th the sale began, and the goods scattered everywhere, with knowledge of the mortgagee. The scattering of the goods was the real wrong, and a part of the wrong, in holding the goods from the mortgagee; and these acts were done February 26 and 28, 1887, and suit began February 23, 1889. It must be plain that, by such dissipation of the security, the sheriff swallowed up the lien of the mortgagee. *Eddy v. Weaver*, 37 Kas. 540, 551. See argument 6 and citations.

12. The jury found for plaintiff for $1,450, and whether it was due to him as mortgagee or assignee of mortgagor does not appear; and if there are any errors against defendants, they are in no position to raise them, and the court must, so

far as defendants are concerned, give judgment for the plaintiff for the full sum. If the causes of action, or either of them, are not barred, it is the duty of this court to now render judgment on the verdict as of July 8, 1889, (that plaintiff may have interest thereon from such time,) for the full sum of $1,450; for in any view plaintiff is entitled to some amount, and the defendants filed no motion for a new trial. If this court holds the causes of action barred, plaintiff is entitled to a reversal for errors of law in the trial of the case. And judgment on the verdict is asked; and if denied, then a reversal and a new trial is asked.

*David Overmyer*, and *Govnor Teats*, for defendants in error:

Simple action of trover. Time of conversion, February 5, 1887. Statute of limitations began to run at that time. See Wood, Lim. of Act., § 183, and authorities cited. "Thus, where goods were taken on an execution, . . . an action of trover was brought, . . . it was held, that the time the statute began to operate was from the first taking of the goods." Ang. Lim. (5th ed.), § 304, and cases cited.

Much is said about continuing trespass in our brother's brief, as if this cause of action was not complete until the wrong-doer had consummated certain acts which he desired after converting the property, and *Mo. Pac. Rly. Co. v. Houseman*, 41 Kas. 304, is cited. That was an action for damages, and such can be recovered if "caused within two years next preceding the action." The damages herein complained of resulted in the conversion, the "high-handed" taking, as plaintiff terms it in his petition. Does it matter in trover what the wrong-doer does with the goods after he has done the wrong complained of, *i. e.*, converted the goods? The statute begins to run at the time of the injury, and not when the injury is complete to fullest extent. Wood, Lim. Act., § 184; *Kerns v. Schoonmaker*, 4 Ohio, 331.

Counsel strive to create a distinction as to rights of mortgagee and others having rights of possession as to trespassing strangers. They confound the rights of mortgagee against

mortgagor with his rights against strangers, and their authorities cited are mostly cases between mortgagee and mortgagor, or *bona fide* purchasers, not trespassers. What difference in this case if the mortgagee never demanded possession of the mortgagor? The property was in the possession of defendant Miller up to February 26, 1887, and he acquired that possession "against the protests and objections of plaintiff at the time he took possession," as he claims in his petition. That allegation the plaintiff cannot gainsay. What could he say in that protest? Why did he protest? "I have a mortgage on that property, and must have it against all strangers to realize my debt." In that protest, that objection, did not the plaintiff declare his intention to take possession of the property? Now, according to *Hall v. Sampson*, 35 N. Y. 275, no demand by mortgagee to sheriff for possession was necessary. The sheriff was liable, if liable at all, to the plaintiff for the value of the goods the moment he took possession, and especially if he took possession against mortgagor's protest and objection. The action accrued at that time. *Ashley v. Wright,* 19 Ohio St. 241; *Durfee v. Grenold,* 69 Ill. 371; *Lewis v. D'Arcy,* 71 id. 648; *Bailey v. Godfrey,* 54 id. 504; Jones, Chat. Mortg., §§ 446, 447. Hence, there can be no error in the court giving judgment on findings showing those facts.

Opinion by STRANG, C.: Action for the conversion of a stock of goods. George Haire, owner of a certain stock of goods, sold the same January 31, 1887, to Elizabeth J. Margason for $1,000, and took in payment therefor four promissory notes of $250 each, due in three, six, nine and twelve months thereafter, and, to secure the payment thereof, took a mortgage back on the goods sold, which was filed for record February 17, 1887. By the terms of the mortgage, it was stipulated that, until default, or until the mortgagee deemed himself insecure, the mortgagor was to continue in possession of said goods. February 5, 1887, while the mortgagor was still in possession of the goods, an execution in favor of Victor B. Buck & Co. against one William Margason was

levied thereon, and they were advertised, and sold February 26 and 28, 1887. February 23, 1889, Haire, the plaintiff, commenced his action as mortgagee and assignee of the mortgagor, to recover the value of the goods. Three defenses were interposed — general denial, statute of limitations, and fraud. A reply was filed, and trial by jury had, which returned a general verdict for the plaintiff in the sum of $1,450, and also made special findings, as follows:

"Q. 1. Did not the plaintiff, George Haire, demand of W. H. Beagle, deputy sheriff, the possession of the stock of goods under his mortgage on February 26, 1887? A. Yes.

"Q. 2. Did said W. H. Beagle, deputy sheriff, refuse to give up the possession when so demanded by George Haire, mortgagee? A. Yes."

"Q. 1. At what time did the sheriff, by his deputy, seize the goods in controversy and take them from the possession of the plaintiff, Mrs. E. Margason? A. February 5, 1887.

"Q. 2. At the time the sheriff seized the goods, were the goods the property of Mrs. E. Margason? A. Yes.

"Q. 3. Was such seizure at the time it was made wrongful as to the plaintiff, George Haire? A. No.

"Q. 4. When was the mortgage under which Haire claimed recorded or filed for record? A. February 17, 1887.

"Q. 5. What part of the goods in controversy was from the stock bought by the plaintiff at the mortgage sale of McKinney, Handley & Walker? A. Do n't know.

"Q. 6. What part of the goods in controversy are of the goods bought by Wm. Margason in the name of E. J. Margason, after Haire bought the store at the chattel-mortgage sale? A. Do n't know.

"Q. 7. What was the market value of the goods seized by the defendant, Sheriff Miller or his deputy, at the time they were seized? A. Do n't know.

"Q. 8. What was the value of the goods bought by Haire at the mortgage sale left in the store on the 31st day of January, 1887? A. Do n't know.

"Q. 9. Are the plaintiff, George Haire, and Mrs. E. J. Margason, any relation? If so, what? A. George Haire son-in-law to Mrs. E. J. Margason.

"Q. 10. Also, what relation is E. J. Margason to William Margason? A. His wife."

The defendants moved for judgment on the special findings in their favor, on the ground that the findings showed that the action was barred. This motion was sustained. The plaintiff moved for judgment on the verdict, which motion was overruled. He then moved to set aside the findings and verdict, which was denied, and also for new trial, which was overruled.

The only question in the case is, was the action barred by the statute? If the statute commenced to run against the claim of Haire from the date of the levy on the goods in the possession of the mortgagor, his right of action was barred with the expiration of two years from said 5th of February, 1887, and before his suit was begun, and the judgment of the court below should be affirmed. But if the statute did not commence to run against Haire until he demanded the goods from the officer having the levy thereon, on the 26th day of February, 1887, the statute had not fully run when his suit was brought, and the action was not barred, and the judgment should be reversed. By the terms of the mortgage from Mrs. Margason to Haire, she was to remain in possession and control of the goods until default in payment was made, or Haire deemed himself insecure. At the time of the levy upon the goods by the sheriff, no default had occurred, and Haire had not declared himself insecure. The mere levying of the execution upon the goods constituted no trespass upon the rights of Haire. He was not in possession of the goods when the levy was made, nor had his right to possession accrued, because no default had been suffered, and he had not declared himself insecure. The levy invaded none of his rights. It affected only the rights of the mortgagor, Mrs. Margason. On the 26th of February, when the goods were about to be sold, and before they were sold, Haire elected to deem himself insecure, and demanded the possession of the goods from the party in possession thereof—the officer making the levy thereon. His right to the possession of the goods then accrued, and from thenceforward the action of the sheriff was such an invasion of his rights as to set the statute to running

against him.   In the case of *Ament v. Greer*, 37 Kas. 648, this court says:

"Where the mortgagor of chattels has the right to the possession of the mortgaged property until default, and before the default an execution against him and in favor of a third person is levied by an officer on the property, the levy attaches to and covers only the interest of the mortgagor, and the mortgagee, after default, has the right to take possession of the property as against the officer."

(See, also, *Rankine v. Greer*, 38 Kas. 343; *Easter v. Traylor*, 41 id. 493.)

It is after default that the mortgagee has the right to take possession.   And certainly the statute cannot commence to run against him until he has the right to the possession of the goods.   The court in that case say:

"And in such a case, when the mortgagee after default demands the property from the officer, and the officer refuses to surrender the same, the mortgagee may *then* maintain an action of replevin against the officer for the recovery of the property."

After default and demand for the goods, the mortgagee may maintain his action.   Would he not have the full period of the statute after default in such a case in which to bring his action?   There can be no doubt about it.   And if the full statutory period after default in such a case, why not in this?   Is there any difference in principle in this respect in an action of replevin and an action for the value of the goods?   We do not understand that there is.   Haire demanded the goods of the officer February 26, 1887, and the officer refused to surrender them.   We think the statute commenced to run at that time.   The action was begun February 23, 1889, and was not therefore barred.

It is recommended that the judgment of the district court be reversed, and that judgment be entered in this court on the general verdict and the findings for the plaintiff for $1,450, and interest from June 24, 1889.

By the Court: It is so ordered.

All the Justices concurring.